UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BROOKE ARNOLD,

     Plaintiff,                    Case No.:

vs.

SOURCE SOLUTIONS
MANAGEMENT, LLC,

     Defendant.

_____/

## **COMPLAINT**

Plaintiff, Brooke Arnold ("Plaintiff" or "Arnold") formerly known as Brooke Slawson, by and through the undersigned counsel, hereby sues Defendant, Source Solutions Management, LLC, ("Defendant" or "Source").  In support thereof, Plaintiff states:

## **INTRODUCTION**

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt. Plaintiff brings the action for statutory damages and actual damages against Defendant, as well as attorney's fees and the costs of litigation for the Defendant's violations of the Florida Consumer Collection Practices Act, Title XXXIII, Chapter 559, Part VI, Florida Statutes ("FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 *et seq.* (the "FDCPA"), and violations of the Telephone Consumer Practices Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  These laws prevent creditors and debt collectors from *inter alia,* engaging in abusive, unfair and deceptive debt

collection practices, as well as regulate the type of telephone equipment organizations may use to contact consumers for debt collection purposes.

## GENERAL ALLEGATIONS

1.       This is an action for damages which exceeds $30,000.00 exclusive of attorneys' fees and costs.

2.       Jurisdiction and venue for purposes of this action are conferred by Florida Statute § 559.77 and 15 U.S.C. § 1692k(d).

3.       At all times material herein, the conduct of the Defendants, complained of below, occurred in Hernando County, Florida.

4.       At all material times herein, Plaintiff is a natural person residing in Hernando County, Florida.

5.       At all material times herein, Source Solutions Management, LLC is a collection agency headquartered in the City of Rochester, Monroe County, State of New York.

## TCPA STATUTORY STRUCTURE

6.       Congress enacted the TCPA to "protect the privacy interests" of consumers in response to the "increasing number of consumer complaints" made to both residential and wireless phones.[1]

7.       The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111,

---

[1] Senate Report No. 102-178, October 8, 1991, 1991 U.S.C.C.A.N. 1968; *Id*. at 1969; *see, also* PL 102–243, December 20, 1991, 105 Stat 2394.

125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

8.     The TCPA defines an automated telephone dialing system ("ATDS") as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers". *See* 47 U.S.C. § 227(a)(1).

9.     The Federal Communications Commission ("FCC"), which Congress vested with authority to prescribe regulations implementing the TCPA's requirements, has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003).

10.     The TCPA specifically prohibits the use of an ATDS to contact consumers on their cellular phones without the prior express consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA also specifically prohibits the use of pre-recorded voice messages in telephone calls to cellular phones without the called party's express prior consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

12.     "Prior express consent" may be revoked "using any reasonable method including orally or in writing." *See In re the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order, FCC 15–72 (CG Dkt. No. 02–278, WC Dkt. No. 07–135) at ¶ 64 (July 10, 2015). Even oral instructions to cease calls effectively revokes any prior consent the caller claims they may have had.  *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Under the TCPA, any person who fails to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to any actual monetary loss from such a violation, or to receive $500.00 in damages for each such violation, whichever is greater.

14.     Under the TCPA, any person who willfully fails to comply with any requirement imposed with respect to any consumer may be required to pay the consumer an amount equal to not more than 3 times the amount of the consumer is entitled to receive for each such violation, or $1,500.00 in damages for each such violation.

### FDCPA AND FCCPA STATUTORY STRUCTURE

15.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., Sections 1692(a) and (e); Fla. Stat., Sections 559.55 and 559.77(5).

16.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or who "regularly collects or attempts to collect,

4

directly or indirectly, debts owed or asserted to be owed or due to another," and prohibits any such debt collector or person from engaging in particular conduct in connection with collecting consumer debts.  15 U.S.C., Section 1692(a)(6); Florida Statutes, Section 559.55(5).

17.     Specifically, the FCCPA prohibits certain unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat., Section 559.55(2) (emphasis added).

18.     For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  *See* 15 U.S.C., Sections 1692(d)-(e).

19.     Similarly, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from claiming, attempting, or threatening to enforce a consumer debt "when such person knows that the debt is not legitimate" or by asserting a legal right that does not exist.  *See* Fla. Stat., Sections 559.72(7) and 559.72(9).

## **GENERAL ALLEGATIONS**

20.     At all material times herein, Plaintiff and her spouse are a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

21.     At all material times herein, Source, itself and through its affiliates, regularly attempts to collect debts, including but not limited to, alleged balances due from Plaintiff on a mortgage loan.

22.     At all material times herein, Source is a "person" subject to Florida Statutes Section 559.72.  *See* Florida Statutes, Section 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

23.     At all material times herein, Source is a "debt collector" as defined by Florida Statutes, Section 559.55(7) and 15 United States Code, Section 1692a(6).

24.     At all material times herein, Source uses interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

25.     At all material times herein, Source attempts to collect a debt, including but not limited to, an alleged balance on the Account.

26.     At all material times herein, Source is a "consumer collection agency" within the definition established by Florida Statutes, Section 559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

27.     At all material times herein, Source attempted to collect debts, including but not limited to, alleged balances due from Plaintiff's spouse on a time-barred automobile deficiency (herein, the "Account" or "Debt")

28.     At all material times herein, the alleged balance due on the Account is a consumer debt, an obligation resulting from a transaction for goods or services incurred primarily for personal, household, or family use.

29.     At all material times herein, Source's conduct regarding the Account complained of below qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

30.     At all material times herein, Source used, controlled and/or operated an "automatic telephone dialing system" as defined by the TCPA, 47 United States Code, Section 227(a)(1); which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial such numbers.

31.     At all material times herein, Defendant acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

32.     All necessary conditions precedent to the filing of this action occurred, or Defendant waived the same.

## FACTUAL ALLEGATIONS

33.     Several years ago, Daniel Arnold, Plaintiff's spouse incurred a debt for the purchase of a Chevrolet Truck.

34.     The subject debt was incurred primarily for personal, household or family use.  More specifically, the Debt was used as the primary family vehicle.

35.     Thereafter, the vehicle was totaled in an accident which created a deficiency (the "Debt" or "Account"). The last payment on the Debt was more than ten years ago.

36.     Neither Plaintiff nor her spouse received any further notification about the Debt.

37.     Plaintiff is the owner, regular user, and possessor of cellular telephone number 352-XXX-1269 (hereinafter, "Cellular Telephone").

38.     At no time herein did Defendant have prior express consent to contact Plaintiff on her Cellular Telephone using an automated dialing system and artificial prerecorded voice. Plaintiff only obtained this Cellular Telephone number three years ago and had never provided this number to the original creditor or Defendant.

39.     Between 2019 and 2020, Plaintiff started to receive automated calls to her Cellular Telephone from Defendant about the Debt.

40.     When Plaintiff answered the calls, she informed Defendant that they were calling her Cellular Telephone, and not her husband who was the debtor for the Account.

41.     Plaintiff further informed Defendant that she and her husband retained an attorney for the purposes of filing for bankruptcy and offered to provide the attorney's name and contact information.

42.     Each time Plaintiff offered to provide Defendant with the name and contact information for her bankruptcy attorney, Defendant would refuse the information and would even hang up on Plaintiff.

43.     Notwithstanding Defendant's actual knowledge of Plaintiff having retained legal counsel with respect to the Debt, that Plaintiff was not the debtor on the Account, and that Plaintiff and her husband intended to file for bankruptcy; Defendant and its representatives, agents, employees, or assigns have  telephoned Plaintiff's Cellular Telephone on numerous occasions for the purposes of collecting on the alleged Debt without the appropriate consent.

44.     Defendant repeatedly used an automatic telephone dialing system and artificial prerecorded voice to call Plaintiff's Cellular Telephone in an attempt to collect on the alleged Debt, and without Plaintiff's prior express consent.

45.     At all times material hereto, to the extent Defendant contends that it had consent to contact Plaintiff on her Cellular Telephone, any such consent was revoked for Defendant to make autodialed Debt collection calls the moment Defendant was advised of that Plaintiff was not the debtor, Plaintiff requested that the calls cease, and that Plaintiff and her spouse had legal representation with respect to the Debt.

46.     Notwithstanding Plaintiff having retained legal counsel with respect to the Debt and Defendant having notice of the same, having received specific requests to cease and desist all communications, and having informed Defendant that she is not the debtor; Defendant has willfully and knowingly continued to contact Plaintiff directly and on multiple occasions, using an automatic telephone dialing system with an artificial prerecorded voice to make calls to her Cellular Telephone in an attempt to collect the Debt.

47.     On October 7, 2020 at 2:54 p.m. Defendant called Plaintiff's Cellular Telephone from phone number (701) 214-4902.

48.     Plaintiff did not answer the immediately aforementioned call but did receive a voicemail from Defendant. The voicemail was left with an artificial prerecorded voice. A portion of the transcript for the voicemail is attached hereto as Exhibit "A."

49.     On other occasions, Plaintiff would answer the calls, or return Source's calls to 866-568-3005, and a live female representative would be on the call.

50.     Plaintiff informed the representative that she was not the debtor, that Plaintiff and the debtor retained legal counsel with respect to the Debt, and to stop calling her Cellular Telephone.

51.     The representative would then continue to threaten Plaintiff and the debtor with legal process to collect the debt through the courts or would visit Plaintiff's home or the debtor's place of employment.

52.     The calls between Plaintiff and the female representative often resulted in screaming matches and argument.

53.     At one-point Plaintiff received multiple calls every day from Defendant.

54.     This is merely a sampling of the calls Plaintiff has received, as Plaintiff has not been able to record the specifics of each and every call Defendant made to Plaintiff on account of her health, her work and personal commitments, and on account of the continued and increasing stress associated with the barrage of harassing debt collection calls.

55.     Under Florida Law, a suit on an unsecured debt must be brought within four (4) years of the date of last payment.  See Fla. Stat. § 95.11(3).  Thus, the time period to bring suit on the Debt had elapsed.

56.     Despite this, the communications and conduct by Defendant falsely suggested that Plaintiff or her husband could still be sued for the debt. At no point did Defendant inform Plaintiff that it could not sue her or her husband due to the age of the Debt or because the statute of limitations had run.

57.     By stating that Source would sue on the Debt, Source's communications imply that Defendant still had such options available to them in order to collect upon the Debt.

58.     In fact, Defendant could not sue to collect Plaintiff's spouse's debt because the statute of limitations had run on the debt.

59.     Moreover, there is no benefit or discount that Plaintiff or her spouse would realize in making payment on the defaulted Debt, because the defaulted Debt was time barred.

60.     Defendant's failure to disclose effectively that no one could sue Plaintiff or her spouse on this debt is material.   This lack of proper disclosure would leave the consumer without enough information to make a decision as to what to do about the collection of the defaulted Debt at issue and cause them to believe that the Debt needed to be paid.

61.     Defendant's communications are to be interpreted under the "least sophisticated consumer" standard.   See *Jeter v. Credit Bureau,* 760 F.2d 1168, 1176 (11th Cir. 1985); *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1193-1194 (11th Cir. 2010).

62.     By demanding payment on a time barred debt in an attempt to induce payment or settlement of the Debt which was no longer enforceable without providing the proper required disclosures, Defendant was claiming, attempting or threatening to assert the existence of a legal right when each Defendant has knowledge that such right does not exist.

63.     Plaintiff has retained the law firm of Kopp Law, P.A. for the purpose of pursuing the matter against the Defendant and is obligated to pay a reasonable fee for their services.

64.     As a result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite the fact that she was not the debtor and informed Defendant that she was represented by legal counsel, that Plaintiff must endure Defendant's continued unlawful continued debt collection attempts.

65.     The FCCPA, Section 559.77, provides for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

66.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA of the regulations proscribed thereunder.

67.     Additionally, the TCPA Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system, predictive telephone dialing system, or artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

68.     At all material times herein, it would have been possible for Defendants to avoid violating the terms of the FCCPA and the TCPA.

69.     Upon information and belief, based upon the aforementioned allegations, Defendant's telephone calls made to Plaintiff's Cellular Telephone using an automatic dialing system and an artificial prerecorded voice were made in willful and knowing violation of the TCPA.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE—**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72 et seq.</u>**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

70.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.55(7) by collecting consumer debts from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

71.     Specifically, Plaintiff is not the debtor on the Account as the Account belongs to Plaintiff's husband.

72.     Plaintiff informed Defendant that Defendant was calling her Cellular Telephone, requested that they stop calling, and informed Defendant that Plaintiff and the debtor were represented by legal counsel with respect to the Debt.

73.     Despite the forgoing, Defendant repeatedly called Defendant's Cellular Telephone using an automated dialing system and artificial prerecorded voice, and threatened Plaintiff with legal process and visits to Plaintiff's home or her spouse's place of employment, all in an attempt to collect the Debt.

74.    The communications by Defendant were increasingly threatening in nature, threatening to file a lawsuit against Plaintiff's husband, threatening to visit Plaintiff's home and husband's place of employment, all if Plaintiff failed to pay the debt.

75.    Source's conduct served no purpose other than to annoy and harass Plaintiff into paying the Account despite Plaintiff's representation by legal counsel, her requests that communications cease, and informing Source that she was not the debtor and that they did not intend to pay the Debt because her and her husband would be filing bankruptcy; Source continued to attempt to collect the Account and continued to contact Plaintiff directly in its attempt to collect the Account.

76.    Moreover, Source's conduct was intended only to exhaust Plaintiff's will and went beyond reasonable efforts of persuasion and negotiation.

77.    Defendant is subject to and has violated the provisions of Fla. Stat. § 559.72(18) by communicating with a debtor when Source has actual knowledge that Plaintiff was represented by legal counsel with respect to the Debt.

78.    Specifically, Plaintiff repeatedly provided verbal notice to Source that she was represented by legal counsel with respect to the Debt and attempted to provide legal counsel's name and contact information.

79.    Source would purposefully refuse the information or disconnect the call to prevent Plaintiff from providing the information.

80.    Despite Source's actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt, Source continued to communicate directly with Plaintiff in an attempt to collect the debt, by calling her cellular telephone multiple times within the

past two years, all done in reckless disregard of Plaintiff's right to be free from illegitimate Debt collection attempts.

81.     As a direct and proximate result of Source's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

82.     Source 's willful and flagrant violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Account constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

83.     As a direct and proximate result of Source 's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT TWO:
### FAIR DEBT COLLECTION PRACTICES ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692c</u>

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

84.     Source  is subject to, and violated the provisions of, 15 United States Code, Section 1692c by continuing to communicate with a consumer when the Source  has actual knowledge that the consumer is represented by an attorney with regard to the debt and has knowledge of, or can readily ascertain the attorney's name, address, and contact information.

85.     Specifically, Plaintiff advised Source that she was represented by legal counsel and that Plaintiff wished Defendant cease all further communications, yet Source continued to communicate with Plaintiff both directly and indirectly in an attempt to collect upon the Debt by placing calls to Plaintiff's Cellular Telephone.

86.     Despite having knowledge that Plaintiff was not able or going to pay the Debt and that she had retained legal counsel, Source continued to place debt collection calls to Plaintiff.

87.     As a direct and proximate result of Source's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT THREE:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e, e(4), e(10), and e(13)**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

88.     Source is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2), e(4), e(5), e(10), and e(13) by using false representations and deceptive means in attempting to collect the Account, including by falsely representing the amount, legal status or character of the debt.

89.     Moreover, debt collectors are prohibited from threatening to take any action that the collector cannot legally take. See 15 U.S.C. § 1692e(5).

90.     Attempts by debt collectors to collect time barred debts through deceptive and misleading collection letters violate § 1692e of the FDCPA.  See *Palmer v. Dynamic Recovery Solutions, LLC,* 2016 WL 2348704 (M.D. Fla. 2016); *Pantoja v. Portfolio Recovery Assoc.,* 852 F.3d 679 (7th Cir. 2017), petition for cert. denied., 86 U.S.L.W. 3090 (U.S. Jan. 16, 2018) (No.17-255); *Daugherty v. Convergent Outsourcing,* 846 F.3d 507 (5th Cir. 2016); *Buchanan v. Northland Group,* 776 F.3d 393 (6th Cir. 2015); *McMahon v. LVNV Funding,* 744 F.3d 1010 (7th Cir. 2014).

91.     Specifically, Plaintiff advised Source that she (i) is not the debtor, (ii) is represented by legal counsel, and (iii) refused to pay the Debt because she and her husband intended to file for bankruptcy.

92.     Despite having knowledge that Plaintiff was not the debtor, that Plaintiff was not able or going to pay the Debt and that she had retained legal counsel, Source placed multiple debt collection calls to Plaintiff's Cellular Telephone in an attempt to reach Plaintiff's husband, Daniel Arnold.

93.     During these calls Source threatened to sue Plaintiff and her spouse or serve them with legal process, visit Plaintiff's home, and visit Plaintiff's husband's place of employment.

94.     Defendant did not even attempt to provide a disclaimer that the debt was time-barred.  The communication was false, deceptive or misleading because Defendant failed to foreclose the possibility that Defendant could not sue on the debt.

95.     Thus, Defendant's communications and conduct violated § 1692e of the FDCPA.

96.     Defendant's false and misleading statements are material.  They would lead a consumer to believe that they had to pay this debt to avoid being sued, credit reported, or having to pay the full amount at some point in the future.  See *Lox v. CDA,* 689 F.3d 818, 826 (7th Cir. 2012).

97.     Each Defendant's violations of the FDCPA render them liable for actual and statutory damages, costs and reasonable attorneys' fees.  See 15 U.S.C. § 1692k.

**COUNT FOUR:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692f**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

98.     Section 1692f of the FDCPA prohibits a debt collector from using an unfair or unconscionable means to collect or attempt to collect a debt.  See 15 U.S.C. § 1692f.

99.     Defendant, by attempting to collect a time barred debt without even attempting to provide a disclaimer that such Debt was time barred, used an unfair or unconscionable means to collect a debt in violation of § 1692f because Defendant failed to foreclose the possibility that Defendant could not sue on the debt.

100.    This is a materially unfair and unconscionable means that would lead any consumer to believe that they had to pay this debt to avoid being sued or receiving home visits from a debt collector.  See *Lox,* 689 F.3d at 826.

101.    Defendant's violations of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees.  See 15 U.S.C. § 1692k.

**COUNT FIVE:**
**TELEPHONE CONSUMER PROTECTIVE ACTION –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

102.    Source is subject to, and has violated the provisions of, 47 United States Code, Section 227(b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to make calls to a telephone

number assigned to a cellular telephone service without Plaintiff's prior express consent.

103.   At no time did Source have Plaintiff's prior express consent to make Debt collection calls to Plaintiff on her Cellular Telephone.

104.   Further, if Source contends it had such consent, such consent was revoked as a matter of law when Source received: (i) Plaintiff's dispute that the debt was not hers, (ii) notice of legal counsel's representation of Plaintiff with respect to the Debt; (iii) Plaintiff's express verbal withdraw of any alleged prior consent to be contacted for any purpose on her Cellular Telephone; and (iv) when Plaintiff informed Source that she and the debtor would file for bankruptcy and would not be paying the extremely old Debt.

105.   Additionally, if Source contends these phone calls were made for "information purposes only," they still lacked the required express consent necessary to make such informational calls to Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

106.   Despite lacking Plaintiff's prior express consent, Source has made several Debt collection phone calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

107.   The telephone calls made by Source, complained of herein, are the result of a repeated willful and knowing violation of the TCPA.

108.   As a direct and proximate result of Source's conduct, Plaintiff has suffered:

    a.   The periodic loss of her cellular phone service;

    b.   Lost material costs associated with the use of peak time cellular phone minutes;

c. Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing Debt collection calls placed in violation of the TCPA to collect the waived Debt;

d. Statutory damages; and

e. The expenditure of costs and attorney's fees associated with the prosecution of this matter.

**COUNT SIX:**
**TELEPHONE CONSUMER PROTECTIVE ACTION –**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through sixty-nine (69) as if fully restated herein and further states as follows:

109. The conduct of Source complained of herein, is the result of a repeated willful and knowing violation of the TCPA.

110. More specifically, as prior express consent never existed or was revoked prior to Source's placement of calls to Plaintiff's Cellular Telephone, and Source is fully aware of the TCPA and its restrictions, Source's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

111. Source also knows that it did not, and has not, reached out to Plaintiff to independently obtain Plaintiff's prior express consent—oral, written or otherwise—to call Plaintiff's Cellular Telephone using an ATDS, a PTDS and/or an APV.

112. Source was also undisputedly aware of Plaintiff's representation of counsel with respect to the alleged Debt, as well as had knowledge the Debt was eliminated, yet

knowingly and consciously made the Debt collection calls to Plaintiff's Cellular Telephone anyway.

113.    Source is also fully aware of the TCPA and its restrictions and, as such, Source's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

114.    As a result of Source's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble statutory damages, up to $1,500.00, for each and every violation, as alleged above, pursuant to 47 United States Code, Section 227(b)(3)(B) and 47 United States Code, Section 227 (b)(3)(C).

115.    Plaintiff is also entitled to and seeks injunctive relief enjoining Defendant from further violations of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Source Solutions Management, LLC declaring that Source Solutions Management, LLC violated the FCCPA, FDCPA and the TCPA;

b.    Judgment against Source for maximum statutory damages for the violations of the FCCPA;

c.    Judgment against Source Solutions Management, LLC enjoining them from engaging in further conduct in violation of the FCCPA;

d.    Judgment against Defendant for maximum statutory damages for

violations of the FDCPA;

  e. Judgment enjoining Defendant from engaging in further conduct in violation of the FDCPA;

  f. Judgment against Source Solutions Management, LLC for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

  g. Judgment against Source Solutions Management, LLC for treble damages in the amount of up to $1,500.00 for each of Defendant's telephone calls that violated the TCPA for which Defendants acted knowingly and/or willfully;

  h. Actual damages in an amount to be determined at trial;

  i. Compensatory damages in an amount to be determined at trial;

  j. Punitive damages under the FCCPA in an amount to be determined at trial;

  k. An award of attorneys' fees and costs; and

  l. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant, and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

KOPP LAW, P.A.

/s/ Rebbecca A. Goodall
William J. Kopp, Esq.
Florida Bar No.: 83605
Kopplawpa@gmail.com
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
rgoodall.law@gmail.com
100 Ashley Drive S.
Suite 1750
Tampa, FL 33602
(813) 999-3355; (727) 999-2016 (fax)
Attorneys for Plaintiff,
Brooke Arnold

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BROOKE ARNOLD,

     Plaintiff,                   Case No.:

vs.

SOURCE MEDIATION SERVICES,

     Defendant.

_____/

# EXHIBIT "A"

